Filed 8/30/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| ROYAL ALLIANCE ASSOCIATES, INC. | B264619 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS151127) |
| v. | |
| SANDRA L. LIEBHABER et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

Jones Bell Abbott Fleming & Fitzgerald, G. Thomas Fleming, III, William M. Turner and Kasumi Laura Takahashi for Plaintiff and Appellant.

Steiner & Libo, Leonard Steiner for Defendant and Respondent Sandra L. Liebhaber.

Greenberg Glusker Fields Claman & Machtinger, Norman H. Levine and Lori L. Werderitch; Terri L. Reicher for Defendant and Respondent Financial Industry Regulatory Authority, Inc.

Appellant Royal Alliance Associates, Inc., a securities brokerage firm, petitioned to confirm an arbitration award recommending expungement of an allegation of misconduct from the record of one of its employees, Kathleen J. Tarr. The individual who made the allegation of misconduct, Sandra Liebhaber, petitioned to vacate the same arbitration award. Liebhaber argued that the arbitrators violated the rules applicable to the arbitration and refused to hear evidence she sought to introduce and cross-examination she sought to elicit. The Financial Industry Regulatory Authority, Inc. (FINRA), under whose auspices and rules the arbitration at issue was performed, also petitioned to vacate the award on similar grounds.

The trial court denied Royal Alliance's petition to confirm the award and granted Liebhaber's and FINRA's petitions to vacate, ruling that the arbitrators exceeded their powers and that Liebhaber's rights were substantially prejudiced by the arbitrators' misconduct and refusal to hear material evidence. Royal Alliance appealed, and we affirm. The arbitrators denied Liebhaber a full and fair opportunity to introduce and challenge evidence material to the expungement proceedings to which she was a party. The arbitrators' refusal to hear Liebhaber's evidence and cross-examination deprived Liebhaber of a fair hearing and substantially prejudiced her rights within the meaning of Code of Civil Procedure section 1286.2.

## BACKGROUND

### I. Underlying Action

Royal Alliance is a securities broker-dealer. It employed Tarr as a financial advisor from July 2002 to July 2010. Liebhaber was a client of Royal Alliance who obtained financial advice from Tarr in 2007.

Royal Alliance is a member of FINRA, a self-regulatory organization (15 U.S.C. §§ 78c(a)(26), 78s(b)) that is "'"responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation" [citation]'" of disputes that arise between investors and securities firms. (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1128; see also 72 Fed. Reg. 42169, 42170

2

(Aug. 1, 2007).)  In its capacity as a self-regulatory organization, FINRA has promulgated a variety of rules governing the conduct of its members and persons associated with them. (See FINRA Rule 0140(a).) Royal Alliance and Liebhaber both agreed to be bound by FINRA's rules, including those pertinent to dispute resolution. We granted Royal Alliance's request for judicial notice of several FINRA rules and related materials.

In May 2013, Liebhaber filed a statement of claim against Royal Alliance with FINRA. Liebhaber alleged that Tarr sold her "illiquid, high-risk investments" that were "inappropriate and unsuitable" for her individual retirement account.  Liebhaber further claimed that Royal Alliance was negligent, breached its fiduciary duty to her, and violated state securities laws.  She sought $325,000 in compensatory damages.

Liebhaber and Royal Alliance agreed to submit to binding arbitration of Liebhaber's claims "in accordance with FINRA By-Laws, Rules, and Code of Arbitration Procedure."  Liebhaber and Royal Alliance ultimately settled the case for $30,000 after an arbitration panel was convened but before an arbitration hearing was held.

## II.     Expungement Proceedings

In accordance with FINRA rules and regulations, Liebhaber's allegations against Tarr were documented in FINRA's Central Registration Depository (CRD), an electronic database containing "'information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings. . . .'  (15 U.S.C. § 78*o*-3(i)(1)(A) & (i)(5).)"  (*Lickiss v. Financial Industry Regulatory Authority*, *supra*, 208 Cal.App.4th at p. 1128.)  Information contained in the CRD is accessible to securities firms and regulators.  Certain customer complaints and allegations of misconduct documented in the CRD also are available to the public via FINRA's "BrokerCheck" website. Liebhaber's allegations against Tarr were publicly accessible and remained so after the case was settled.

After Liebhaber's claims were settled, Royal Alliance requested that the arbitrators keep the case open because it intended to seek expungement of Liebhaber's

3

allegations from Tarr's CRD record.  FINRA rules require requests for expungement to be presented to either a court of competent jurisdiction or a FINRA arbitration panel. (See FINRA Rules 2080(a), 12805.)  Royal Alliance submitted a request for expungement on behalf of Tarr to the previously convened FINRA arbitration panel on June 9, 2014.  Liebhaber remained a party to the case, but Tarr was not named as a party.

On June 30, 2014, Liebhaber's counsel advised the arbitration panel that he did not intend to file a pre-hearing brief but planned to call Liebhaber and Tarr as witnesses at the arbitration hearing.  The record does not indicate whether Royal Alliance or the arbitration panel responded to this advisement.  Also absent is the written evidence the parties submitted prior to the hearing.

The three-member panel of arbitrators held a telephonic arbitration proceeding on August 12, 2014.  Liebhaber and her counsel, Robert S. Banks, Jr., were on the call, as were Royal Alliance and its counsel, Kasumi L. Takahashi.  Takahashi informed the arbitrators that Tarr was on the line as well; "[s]he's here to offer any additional testimony and answer any questions that the panel may have of her . . . ."

Takahashi argued that expungement was warranted because Liebhaber's allegations against Tarr were false.  She contended that the investments Tarr recommended were suitable for Liebhaber, and Liebhaber's alleged net losses could be attributed to her large withdrawals from her retirement account and "the 2008 market crash."  Takahashi also noted that a complaint similar to Liebhaber's previously had been expunged from Tarr's record

At the conclusion of her argument, Takahashi informed the arbitrators that Tarr had "a couple things [*sic*] that she would like to say to the panel before we kick it over to the claimant's counsel."  The presiding arbitrator said that Tarr could speak, and Liebhaber's counsel did not object.  No oath was administered to Tarr, who presented a lengthy narrative description of her interactions with and advice to Liebhaber.  Tarr also noted that she was "the daughter and granddaughter of ministers" and emphasized the "vigorous" nature of her opposition to Liebhaber's allegations.  No one interrupted Tarr

4

with questions or objections.  When Tarr concluded her remarks, Takahashi informed the panel that Royal Alliance had nothing further to present.

In his response argument, Banks contended that Royal Alliance failed to show that Liebhaber's complaints against Tarr were false or factually impossible.  He also emphasized the importance of making complete (i.e., not expunged) CRD and BrokerCheck records available to brokerage firms and the general public.

At the conclusion of his argument, Banks told the arbitrators, "I guess I would like to ask some questions of Ms. Tarr and I would also like to ask some questions of Ms. Liebhaber so that you can have a little bit more information before you make the decision that they're asking you to make."  Takahashi objected to "counsel's proposed procedure for this hearing."  She argued, "This is a hearing on a request for expungement, it's not a hearing on the merits of the case.  The underlying case was settled.  The only question before the panel right now is whether or not the claim should be expunged based on the falsity of allegations, so I would request that we not hear from the claimant at this time and that we have a chance to rebut the opposition."

The presiding arbitrator commented, "I believe Ms. Tarr didn't say anything substantive that is not already on the record on her behalf with respect to the declaration. I listened carefully to Mr. Banks and I think he, based on the documents that I've seen, has covered all the important points.  [¶]  I don't see that any testimony as such is necessary, setting aside whether it's proper and has not been in effect perhaps prepared for by everybody here, so I'm inclined to think that we should leave it at that, unless Mr. Banks has further argument by himself and go from there."  He then asked for input from his fellow panel members.  One of them commented that she would like to hear from Liebhaber and Tarr.  She thought it was "important to hear the questioning," and commented that "the guidelines are pretty clear that we're supposed to be looking at everything because this was a settled case, and that the more information we have, the easier it is for us to make what I would consider to be a fair and well reasoned decision

5

regarding expungement."[1]  She then added, "[t]hat's just my thought as long as we're not going to be here for another two hours."

The presiding arbitrator responded, "Well, how can we make sure we're not going to be here for another two hours?  That's the problem.  [¶]  I appreciate your comments and I think that's in the best of all possible worlds how it should be."  The third arbitrator then commented that she agreed with the presiding arbitrator.  "[W]ith the greatest respect, I think that allowing claimant's counsel to question Ms. Tarr is out of order, and . . . I do think that that's not the purpose of this hearing, and if it is and the panel needs to be corrected on that, because some of the -- this is kind of a new process that has not been well defined, then we can be corrected on that, but I would be very comfortable with the information, and I'm comfortable with us asking Ms. Tarr questions, but I am uncomfortable with claimant's counsel cross-examining her in any way."  The second arbitrator stated that she was "good with that."  The presiding arbitrator then denied Banks's "request to take testimony from the claimant and to allow questioning by counsel of the respondent."

Banks stated for the record that he "must vigorously object to the panel's denying me an opportunity to question Ms. Tarr about the very events that she is asking you to expunge her record on."  He further stated that he "had a number of questions for Ms. Tarr that went into how she came to meet Ms. Liebhaber, what advice she gave her,

_____

[1] The "guidelines" the arbitrator mentioned are not regulations or rule interpretations promulgated through formal administrative procedures.  They consist of a numbered list that appears on a FINRA webpage entitled "Notice to Arbitrators and Parties on Expanded Expungement Guidance" and within FINRA's "Expungement Training" materials.  In both places, the list reads as follows: "It is important to allow customers and their counsel to participate in the expungement hearing in settled cases if they wish to.  Specifically, arbitrators should:  1) allow the customer and their counsel to appear at the expungement hearing; 2) allow the customer to testify at the expungement hearing; 3) allow counsel for the customer or a *pro se* customer to introduce documents and evidence at the expungement hearing; 4) allow counsel for the customer or a *pro se* customer to cross-examine the broker and other witnesses called by the party seeking expungment; and 5) allow counsel for the customer or a *pro se* customer to present opening and closing arguments if the panel allows any party to present such arguments."

questions about the suitability of the investments, whether she considered certain factors about these investments she was recommending, how much time she spent giving her the advice she gave her and what she told her about whether she should take this early retirement at age 47." The presiding arbitrator thanked Banks for his comments and asked Takahashi to proceed with her rebuttal, which consisted primarily of argument that Banks's comments were not relevant to the issue of expungement.

After the arbitrators asked a few questions, Banks asked the presiding arbitrator if he could "have a few words, please?" Takahashi objected, and the presiding arbitrator sustained her objection after confirming that the other panel members did not want any more information.

The presiding arbitrator thanked counsel for "the very high degree of advocacy on both sides" and indicated that the panel intended to commence deliberations. Banks asked if he could make his record, and despite the presiding arbitrator's response that "I don't think there's any necessity on my behalf to have it on the record here," Banks commented, "I feel like I have not been given a full and fair opportunity to respond to this, the claims that have been made in the hearing." Banks continued, "my client is here prepared to testify, there have been statements about expungements previously granted, information has been admitted about expungements that have been denied, and I think that those are all important matters, but if you don't -- if you won't let me talk about them, I won't." The presiding arbitrator asked the others for their thoughts, and one of them said to Banks, "I think that you may add more information in your mind's eye, but again, I don't think it's going to dramatically impact my part, my participation in the deliberations, and really with a lot of respect I say that to you." The third arbitrator echoed these comments, adding, "we've followed the process and the procedure and the rule as it's stated and I'm very confident that -- and I do appreciate, Mr. Banks, how strongly you feel opposing respondent's request for expungement, but I'm confident that we've allowed all the information that we need to make a good decision."

The arbitration panel issued an award recommending expungement on September 10, 2014. The panel, tracking the language of FINRA Rule 2080, found that Liebhaber's

7

"claim, allegation, or information" against Tarr was "factually impossible or clearly erroneous; and [¶] The claim, allegation, or information is false."[2] The panel cited several reasons for its findings, including the sizable difference between the damages Liebhaber alleged ($325,000) and the amount she accepted from Royal Alliance to settle her claims ($30,000). The panel concluded the amount of the payment reflected a business decision by Royal Alliance rather than Liebhaber's actual net out-of-pocket losses. The panel also made the following findings (emphases added):

"In late 2007, Claimant [Liebhaber] opened an Individual Retirement Account with Respondent [Royal Alliance] with an initial deposit of $315,000.00. Claimant was approximately 47 years of age. Non-party Kathleen Tarr was her broker of record. Stating that her investment objectives were long-term growth and income, with a moderate investment risk, Claimant purchased four separate variable annuities and a real estate investment trust ('REIT') paying over 6% per annum. Almost 15% of her investable monies remained in cash. [¶] Claimant stated in her Statement of Claim that these investments were not suitable for her. The statement of non-party Kathleen Tarr was that the annuities were invested in a broad-based portfolio which matched Claimant's investment objectives and risk tolerance. *This information was not disputed by Claimant.* [¶] Claimant did not add any additional monies to her IRA. Claimant regularly received or took distributions from her IRA. Claimant sold one variable annuity in December 2011. [¶] At the time of the expungement hearing, non-party Kathleen Tarr stated that it was her understanding and belief that Claimant still owns the same three variable

---

[2]FINRA Rule 12805(c) requires arbitrators presiding over expungement proceedings to "Indicate in the arbitration award which of the Rule 2080 grounds for expungement serve(s) as the basis for its expungement order and provide a brief written explanation of the reason(s) for its finding that one or more Rule 2080 grounds for expungement applies to the facts of the case." The pertinent Rule 2080 grounds are "(A) the claim, allegation, or information is factually impossible or clearly erroneous; (B) the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation, or conversion of funds; or (C) the claim, allegation, or information is false." (FINRA Rule 2080(b)(1).)

8

annuities as well as the REIT. *This information was not disputed by Claimant. No other evidence or information regarding suitability was offered by Claimant.*

"Respondent argued that any losses incurred by Claimant were 'paper' losses due to the economic downturn of 2008-2009. By continuing to hold her assets, Respondent argued that Claimant no longer has incurred losses, and, to the contrary, has benefited from the upturn in the economy. *This argument was not disputed by Claimant.*

"*The Panel finds that the statements offered by non-party Kathleen Tarr during the telephonic hearing were credible.* The Panel finds that the investments were suitable for Claimant, and that the claim or allegation of unsuitability is clearly erroneous.

"The Panel finds that based upon the documents described above, the statements and other information presented at the telephonic hearing, and the Settlement Agreement, Claimant's argument that the $30,000.00 [settlement] payment reflected [net out-of-pocket] losses is not true. *In addition, there is no documentation or other evidence to support a claim that Claimant suffered losses as a result of non-party Kathleen Tarr's actions, or Respondent's actions or inactions.*"

The panel charged Royal Alliance with all applicable fees. (See FINRA Rule 12805(d).)

## III. Petitions to Confirm and Vacate

FINRA Rule 2080(a) requires parties seeking expungement of customer complaints from a CRD record to "obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." (FINRA Rule 2080(a).) In accordance with this rule, Royal Alliance filed a petition under Code of Civil Procedure section 1285[3] to confirm the arbitration award. Royal Alliance included with its petition the parties' signed consent forms agreeing to arbitration and a copy of the expungement award. Pursuant to FINRA Rule 2080(b), parties "seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate

---

[3]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

9

documents unless this requirement is waived . . . ." Royal Alliance named both Liebhaber and FINRA as respondents in its petition.

In her answer opposing the petition, Liebhaber requested that the award be vacated pursuant to sections 1286.2 and 1286.4. She asserted three grounds for vacation: "(a) Liebhaber's rights were substantially prejudiced by misconduct of the arbitrators; (b) the arbitrators exceeded their powers in denying Liebhaber's request to present evidence at the hearing; and (c) Liebhaber's rights were substantially prejudiced by the refusal of the arbitrators to hear evidence material to her claims." Liebhaber attached several exhibits to her filing, including her statement of claim, a transcript of the arbitration hearing, Tarr's BrokerCheck report, and FINRA publications titled "Neutral Corner," "Dispute Resolution Expungement Arbitrator Training Manual," and "Notice to Arbitrators and Parties on Expanded Expungement Guidance."

In her accompanying memorandum, Liebhaber argued that the arbitration panel "failed to hold an adequate hearing on expungement in violation of FINRA Rule 12805 by refusing Liebhaber's request to testify, and to cross-examine the broker Tarr." She further contended that the arbitrators "allowed Royal Alliance to present its case for expungement in its entirety" but did not allow her to question either of the witnesses she wanted to call, herself and Tarr. Liebhaber emphasized that the arbitrators' award repeatedly stated that she failed to offer evidence or dispute Royal Alliance's evidence, and contended that "no evidence was presented or information not disputed [*sic*] *because the arbitrators did not allow Ms. Liebhaber to present any evidence at the hearing* despite her appearance and multiple requests to do so."

FINRA also opposed Royal Alliance's petition and sought to vacate the arbitration award. FINRA took "no position on the merits of the underlying case," but "oppose[d] expungement of the arbitration from FINRA's regulatory database because the arbitrators failed to follow FINRA rules governing such expungements," specifically Rules 2080 and 12805. FINRA argued that the expungement hearing "was fatally defective because Tarr, the broker seeking expungement, was permitted to testify unsworn without cross examination, while her customer Liebhaber, who opposed expungement, was denied the

10

right even to speak, with or without cross examination. As a result, the award's findings were not properly made under FINRA Rule 2080 (which governs arbitrator-ordered expungements)." FINRA further contended that the arbitrators exceeded their powers by violating applicable FINRA rules, and substantially prejudiced Liebhaber by disallowing her testimony.

In reply, Royal Alliance argued that Liebhaber could not establish substantial prejudice because hearings need not include an opportunity to present live testimony and Liebhaber failed to take advantage of the opportunity to submit written statements. It further contended that Liebhaber failed to demonstrate that cross-examination of Tarr would have changed the outcome of the hearing, and that neither FINRA's nor Liebhaber's interests were affected by the award. Royal Alliance also refuted Liebhaber's and FINRA's contentions that the arbitrators violated FINRA rules and exceeded their powers.

The trial court held a hearing on the petitions on May 18, 2015. The court indicated at the outset that its tentative decision was to vacate the award. It explained, "Not only did they [the arbitrators] not permit live testimony, but they also permitted Ms. Tar[r] to testify unsworn. She got to go into the fact that her father was a minister. She got to talk about what a good person she was and all that. Ms. Liebhaber's attorney didn't get a chance to ask her questions. Ms. Liebhaber didn't even get a chance to testify. Somehow that just doesn't sound right, does it?"

Royal Alliance denied that Tarr was "offered as a witness to give testimony un-rebutted," claiming that "[s]he was there to answer questions posed if any by the arbitrators." It also argued that Liebhaber had "no substantial rights in the outcome" of the expungment hearing, since her claims already had been resolved. Royal Alliance additionally asserted that the arbitration award satisfied the requirements of FINRA Rule 12805, and contended that "[i]f FINRA's position is there needs to be live testimony in hearings like that, they need to amend their rule because the rule doesn't require that."

Liebhaber argued that she had an "absolute interest" in the expungement proceedings, because the award deemed her complaints against Tarr false and therefore

11

found her "essentially to have been a liar without anyone hearing from her or giving her a right to cross-examine the principle [*sic*] witness against her, which is a basic fundamental due process right." She further argued that she was "actually representing the interests of FINRA and the general public" by attempting to ensure that Tarr's CRD and BrokerCheck reports were accurate. In her view, "if she's not permitted to cross-examine the broker, then the CRD system -- this whole system becomes a farce." FINRA likewise contended that it had an interest in the proceedings, namely "protecting the integrity of the CRD system and the information contained in it." It further argued that the arbitrators violated FINRA Rule 12805 by not allowing Liebhaber to testify or cross-examine Tarr, despite having advance notice that she wished to do both.

The trial court ultimately adopted its tentative ruling and vacated the arbitration award "on the ground that Liebhaber's rights were substantially prejudiced by misconduct of the arbitrators, the arbitrators exceeded their powers, and Liebhaber's rights were substantially prejudiced by refusal of the arbitrators to hear evidence material to the controversy." The court found that the arbitrators violated FINRA Rule 2080 "by allowing Ms. Tarr to provide an unsworn statement in support of expungement while also preventing Liebhaber's attorney from cross-examining Ms. Tarr in order to determine if the requirements of Rule 2080 were met."

Royal Alliance timely appealed. (See § 1294, subds. (b) & (c); *Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 765-766.)

12

## DISCUSSION

### I. General Arbitration Principles[4]

"Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) Accordingly, "it is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Ibid.*) Likewise, "it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.] [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id*. at p. 11.)

"On the other hand, arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal." (*Hoso Foods, Inc. v. Columbus Club* (2010) 190

---

[4]Security brokerage agreements involve interstate commerce and therefore are governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.). (*Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258, 1263.) However, the parties sought confirmation and vacation of the arbitration award in California state court pursuant to the California Arbitration Act (CAA). (See § 1280 et seq.) "[T]he presence of interstate commerce [is] not sufficient, by itself, to make the FAA's procedural provisions, including its provisions regarding judicial review (9 U.S.C. §§ 10, 11), applicable in California state courts. This is so because a state court applies its own procedural law— here, the procedural provisions of the CAA—absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction." (*Mave Enterprises, Inc. v. Travelers Indemnity Company of Connecticut* (2013) 219 Cal.App.4th 1408, 1429; see also *SWAB Financial v. E*Trade Securities* (2007) 150 Cal.App.4th 1181, 1195 [noting the FAA "does not preempt California's statutory grounds for vacating an arbitration award"].) We accordingly consider the matter under the CAA, including the provisions governing judicial review, namely section 1286.2. (*Mave Enterprises, Inc. v. Travelers Indemnity Company of Connecticut, supra,* 219 Cal.App.4th at p. 1430.)

13

Cal.App.4th 881, 888.) "Precisely because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 12-13.)" (*Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1165.) Indeed, one of the reasons "why we tolerate the risk of an erroneous decision" by arbitrators is the existence of statutes permitting judicial review of the fairness of the arbitration process. (*Moncharsh*, *supra*, 3 Cal.4th at p. 12.)

One such statute is section 1286.2, which enumerates "grounds which will justify vacating an arbitration award." (*California Faculty Association v. Superior Court* (1998) 63 Cal.App.4th 935, 944.) Section 1286.2 provides in pertinent part that a trial court "shall vacate" an arbitration award if it finds that "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator"; "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"; or "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators . . . to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." (§ 1286.2, subds. (a)(3), (a)(4), (a)(5).) The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in section 1286.2 applies and that the party was prejudiced by the arbitrator's error. (See *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826.)

We review the trial court's order vacating the arbitration award de novo. (*SWAB Financial v. E\*Trade Securities*, *supra*, 150 Cal.App.4th at p. 1196.) We review for substantial evidence any determinations of disputed factual issues. (*Ibid.*)

## II.     Analysis

### A.     Violation of the forum rules is not necessary for prejudice.

The parties devote a substantial portion of their briefing to the questions of which portions of the FINRA Code of Arbitration Procedure for Customer Disputes apply, what the applicable provisions require, and whether the arbitrators complied with these

14

requirements.[5]  Prior to oral argument, we asked the parties to be prepared to discuss whether "a finding of substantial prejudice within the meaning of Code of Civil Procedure section 1286.2, subdivision (a)(5) [can] be made absent a finding that the rules of the arbitral forum were violated."  All three parties addressed this issue at oral argument.[6]

Royal Alliance maintained that a party's rights can never be prejudiced—and therefore an arbitral award can never be vacated under section 1286.2, subdivision (a)(5)—if the rules of the arbitral forum are followed.  We disagree.

The CAA, under which Royal Alliance sought confirmation of the expungement award, "seeks to enhance both the appearance and reality of fairness in arbitration proceedings." (*Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 853.)  To that end, it provides the basic parameters of arbitration proceedings unless the parties specifically agree otherwise; "such parameters include limited judicial review of the arbitration award." (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 705.)  Sections 1285 and 1286.2, respectively govern the confirmation and vacation of arbitration awards.  Unlike §§ 1281.6, 1282, 1282.2, and 1283.8, these sections are not by their terms modifiable or avoidable by consent of the parties.  Indeed, courts have characterized section 1286.2, subdivision (a)(5) as a "safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case." (*Hall v. Superior Court* (1993) 18 Cal.App.4th 427, 439 [discussing section 1286.2, subdivision (e), the predecessor statute to section 1286.2, subdivision (a)(5)] (*Hall*); see also *Burlage v. Superior Court* (2009) 178 Cal.App.4th 524, 529.)  Section 1286.2, subdivision (a)(5) does not mention forum rules, or require courts to make a

---

[5] The parties are in agreement only that Rules 2080 ("Obtaining an Order of Expungement of Customer Dispute Information from the Central Registration Depository (CRD) System") and 12805 ("Expungement of Customer Dispute Information under Rule 2080") apply.  They dispute the meaning and breadth of those rules, as well as the applicability of other rules contained in the FINRA Code of Arbitration Procedure for Customer Disputes.

[6] None argued that the federally applicable FINRA rules should be given supremacy or precedence over state statutes or decisional law.

finding that such rules were violated before assessing prejudice and vacating an award. The effectiveness of this "safety valve" and other CAA provisions designed to ensure fairness would be substantially reduced if a party's rights could be prejudiced only in proceedings in which an explicit rule of the forum was violated.

Accordingly, we find it unnecessary in this case to resolve the parties' substantial disagreements regarding the scope of (and degree of arbitrator compliance with) the FINRA rules. The pertinent question for us is not what the FINRA rules provided or whether the arbitrators adhered to them; it is whether the trial court correctly concluded that the arbitrators prevented a party from fairly presenting its case and prejudiced her rights as a result. (*Hall*, *supra*, 18 Cal.App.4th at p. 439.) We therefore focus our analysis on whether the trial court properly vacated the award under section 1286.2, subdivision (a)(5).

**B**.	**The arbitrators refused to hear evidence material to the controversy.**

Section 1286.2, subdivision (a)(5) provides that the trial court "shall vacate" an arbitration award if "The rights of the party were substantially prejudiced by . . . the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." The statute thus presents a two-part inquiry: (1) Did the arbitrators refuse to hear evidence material to the controversy or engage in other conduct contrary to the provisions of the CAA? (2) If so, were the rights of the party seeking to vacate the award substantially prejudiced? We consider the threshold inquiry regarding the arbitrators' conduct first.

Section 1286.2, subdivision (a)(5) includes "refusal of the arbitrators to hear evidence material to the controversy" among the grounds for vacating an arbitration award. Another provision of the CAA, section 1282.2, subdivision (d), provides that, unless they agree otherwise, "[t]he parties to the arbitration are entitled to be heard, to present evidence, and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed. On request of any party to the arbitration, the testimony of witnesses shall be given under oath." Section 1282.2, subdivision (d) is incorporated into section 1286.2, subdivision (a)(5) by the phrase

16

"other conduct of the arbitrators contrary to the provisions of this title." Both statutes codify within the CAA the fundamental principle that "[a]rbitration should give both parties an opportunity to be heard." (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 689.) The parties may be heard on the papers rather than at a live hearing (*Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105), but the opportunity to be heard must be extended to all parties equitably. That requirement was violated here. Both parties to the expungement were permitted to submit written evidence, but only Royal Alliance was given the opportunity to offer oral evidence at the expungement proceeding. The arbitrators barred Liebhaber from doing so.

The arbitrators also foreclosed Liehaber's efforts to question Tarr. Regardless of whether the FINRA rules applicable to expungement hearings expressly contain or somehow incorporate the right to cross-examination, section 1282.2, subdivision (d) "entitles a party to cross-examine witnesses *if* they appear at a hearing." (*Schlessinger v. Rosenfeld, Meyer & Susman*, *supra*, 40 Cal.App.4th at p. 1106; see § 1282.2, subd. (d).) Liebhaber was a party to the proceeding, and Tarr appeared at opposing party Royal Alliance's behest to "offer any additional testimony" for the arbitrators. Although she did not technically "testify" for purposes of California law, as she was not under oath (see § 17, subd. (b)(5)(B)), Tarr appeared and acted as a witness by submitting oral evidence for the arbitrators' consideration. (Cf. § 1282.2, subd. (d) [suggesting that a person may be a witness during an arbitration without being sworn: "On request of any party to the arbitration, the testimony of witnesses shall be given under oath."].) Yet the arbitrators denied Liebhaber any opportunity to question Tarr.

Although section 1282.2, subdivision (d) also provides that "rules of evidence and rules of judicial procedure need not be observed," the procedural flexibility of the arbitral forum does not override participants' fundamental, common law right to a fair proceeding. (See *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 826, fn. 23.) It is one thing to establish reasonable time limits for the parties' presentation and rebuttal of evidence, which is well within an arbitrator's discretion. It is another to curtail one

17

party's oral presentation and exploration of evidence because the arbitration panel does not want "to be here for another two hours." (Cf. *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290-291 [finding reversible error where trial judge "display[ed] ill-disguised impatience" with a litigant, "repeatedly threaten[ed] a mistrial if the proceedings were not concluded quickly enough," and "abruptly ended the trial before [the litigant] had finished his presentation"].) Liebhaber initiated the proceedings that culminated in Tarr's expungement request and was named as a party to the expungement proceedings; she had an interest in the outcome of the proceedings and the right to be treated fairly and in accordance with statutory law during their pendency.

## C. Liebhaber's rights were substantially prejudiced.

The second question presented by section 1286.2, subdivision (a)(5) is whether the rights of a party to the arbitration "were substantially prejudiced." This prejudice criterion was satisfied here.

"Where, as here, a party complains of excluded material evidence, the reviewing court should generally focus first on prejudice, not materiality." (*Hall*, *supra*, 18 Cal.App.4th at p. 439.) A party's mere disappointment with an arbitration decision is not sufficient to prove substantial prejudice. (*Taheri Law Group, A.P.C. v. Sorokurs* (2009) 176 Cal.App.4th 956, 964.) "To find substantial prejudice, the court must accept, for purposes of analysis, the arbitrator's legal theory and conclude that the arbitrator might well have made a different award had the evidence been allowed." (*Hall*, *supra*, 18 Cal.App.4th at p. 439.) The prejudice query under section 1286.2, subdivision (a)(5) is not, as Royal Alliance suggests, "ultimately a question of the sufficiency of evidence," an inquiry generally outside the permissible scope of review of arbitration awards. Rather, it is an examination of the proffered but rejected evidence to determine the impact of its omission under the theory adopted by the arbitrators.

The arbitrators' legal theory in this case was that Liebhaber's contentions were false and clearly erroneous because Royal Alliance and Tarr said they were, and Liebhaber failed to refute these claims or offer any evidence to the contrary. However, the arbitrators did not afford Liebhaber the opportunity to present evidence orally, despite

18

extending such an opportunity to Royal Alliance. Although the arbitrators told Liebhaber that her oral evidence and proposed cross-examination were unlikely to "dramatically impact" their deliberations, they nonetheless relied on the absence of such evidence to support their ruling, mentioning the inadequacy of Liebhaber's presentation at least four times in the written award. The arbitrators also relied on the credibility of the statements Tarr made at the hearing, even though they acknowledged that "Ms. Tarr didn't say anything substantive that is not already on the record on her behalf with respect to the declaration." Accordingly, we conclude that "the arbitrator[s] might well have made a different award" (*Hall*, *supra*, 18 Cal.App.4th at p. 439) if they had allowed Liebhaber to tell her side of the story or question Tarr's.

Royal Alliance correctly notes that the arbitration panel received documentary evidence from both sides. It fails to acknowledge, however, that only Liebhaber was deprived of the opportunity to supplement that cold record with contemporaneous oral comments. The arbitrators permitted Royal Alliance to present Tarr's oral statements, deemed them credible, and relied on them to conclude that she recommended appropriate investments for Liebhaber. But the arbitration panel could not fully weigh the credibility of Tarr's statements due to the absence of cross-examination; "'[o]ne cannot "consider" what one has refused to "hear."'" (*Burlage v. Superior Court*, *supra*, 178 Cal.App.4th at p. 531.) During the expungement proceedings, Liebhaber's counsel placed on the record several lines of questioning he intended to explore with Tarr: "how she came to meet Ms. Liebhaber, what advice she gave her, questions about the suitability of the investments, whether she considered certain factors about these investments that she was recommending, how much time she spent giving her the advice she gave her and what she told her about whether she should take this early retirement at age 47." All of these areas of inquiry were aimed at the ultimate question of whether expungement was warranted because Liebhaber's complaints against Tarr were false or erroneous, and could well have affected the arbitrators' perfunctory conclusion that "the statements offered by non-party Kathleen Tarr during the telephonic hearing were credible." As

19

Liebhaber argued to the trial court, she was not given the opportunity "to show to the panel that . . . what [Tarr] is saying is not exactly accurate."

Simply put, the hearing was not fair. The arbitrators gave Royal Alliance an unfettered opportunity to bolster the written record but denied Liebhaber even a limited chance to do the same. Liebhaber's rights as a party to the arbitration proceedings were substantially prejudiced within the meaning of section 1286.2, subdivision (a)(5), and the arbitration order properly was vacated as a result.

## DISPOSITION

The judgment of the trial court is affirmed. Liebhaber and FINRA shall recover their costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

20