Filed 6/17/24  Sathre v. Davis CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CURTIS J. SATHRE III,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JAIMIE DAVIS,<br><br>　　　　Defendant and Appellant. | B324459<br><br>(Los Angeles County Super. Ct. No. BS136533) |

　　　　APPEAL from orders of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

　　　　Jaimie Davis, in pro. per., for Defendant and Appellant.

　　　　Reif Law Group, Brandon S. Reif, Marc S. Ehrlich, and Drew Frey for Plaintiff and Respondent.

_____

# INTRODUCTION

In 2012 Jaimie Davis lost an arbitration she filed against her former investment advisor, Curtis J. Sathre III, and his company to recover losses she incurred in risky investments. The judgment confirming the arbitration award included an award against Davis of over $135,000 in costs and expert fees, an award Davis has never paid. As the 10-year anniversary of the judgment approached, Sathre filed a renewal of judgment under Code of Civil Procedure section 683.110,[1] and the court ordered the judgment renewed. Davis appeals from the trial court's orders denying her motions to vacate the renewal of judgment and an amended renewal of judgment. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Sathre and Others Obtain an Arbitration Award of Costs and Fees Against Davis, the Trial Court Confirms the Award, and We Affirm*

In 2010 Davis filed a statement of claim against WFP Securities, Inc., an independent broker-dealer and licensed member of the Financial Industry Regulatory Authority (FINRA);[2] John Schooler, WFP Securities' president; and Sathre,

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] FINRA is a self-regulatory organization that provides "arbitration and mediation . . . of disputes that arise between investors and securities firms." (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1096, internal quotation marks omitted.)

a registered representative with WFP Securities. Davis alleged she lost $350,000 in fraudulent investment products Sathre falsely told her were safe, income-producing investments. She further alleged she was in jeopardy of losing $1,862,500 in risky, illiquid limited partnerships and non-publicly traded investments. Davis asserted causes of action for negligence, breach of fiduciary duty, breach of contract, failure to supervise, control person liability, and violation of the Corporations Code. She sought more than $2 million in compensatory damages.

The parties arbitrated the dispute under FINRA's rules and procedures. The arbitration proceeded before a panel of three arbitrators in 2011 and 2012. During the arbitration the arbitrators excluded the testimony of Davis's expert witness as a discovery sanction. The arbitrators ultimately ruled against Davis, finding that she "failed to prove by a preponderance of evidence any of the causes of actions or allegations alleged" and that her causes of action were barred by the applicable statutes of limitations. The arbitrators also ruled that Davis had filed duplicative claims in other fora, that it was "highly likely" she was seeking double recovery, and that her actions violated Rule 12209 of the FINRA Code of Arbitration Procedure for Customer Disputes (which provides that, "[d]uring an arbitration, no party may bring any suit, legal action, or proceeding against any other party that concerns or that would resolve any of the matters raised in the arbitration"). The arbitrators ordered Davis to pay Sathre, Schooler, and WFP Securities $135,755.89 in costs and expert witness fees, plus interest at 10 percent per year, and $21,000 in arbitration fees. The arbitrators also recommended FINRA expunge the arbitration from Sathre's and

Schooler's registration records maintained in FINRA's Central Registration Depository (CRD).[3]

In 2012 the trial court confirmed the arbitration award and ordered FINRA to expunge references to the arbitration from Sathre's and Schooler's CRD records. Davis appealed from the order confirming the award and denying her petition to vacate it, arguing the trial court should have vacated the award because the arbitrators erred in excluding her expert's testimony and because WFP Securities intimidated another investor from testifying on her behalf. We affirmed. (*WFP Securities, Inc. v. Davis* (Apr. 15, 2014, B244528) [nonpub. opn.].)

> B. *Davis Tries To Prevent Sathre from Enforcing the Judgment and Asserts New Claims Against Him*

In 2019 Sathre, seeking to enforce the judgment against Davis, obtained an order requiring her to appear for a judgment debtor examination. After the trial court denied various motions and ex parte applications by Davis to prevent her judgment debtor examination from occurring, Davis filed a petition for a writ of mandate. We granted the petition and held the trial court

---

[3]     "FINRA is required to maintain registration information, including records related to disciplinary proceedings. FINRA maintains the necessary information in a computer database called the Central Registry Depository ('CRD')." (*Santos-Buch v. Financial Industry Regulatory Authority, Inc.* (S.D.N.Y. 2014) 32 F.Supp.3d 475, 479; see *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1097 [CRD is "an electronic database containing "'information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings'""].)

erred in denying Davis's motions and applications without allowing her to appear telephonically at, and without providing a court reporter for, the hearings. We reversed the orders and directed the superior court to designate a different judge to hear Davis's motions. (*Davis v. Superior Court* (2020) 50 Cal.App.5th 607.)

Meanwhile, in 2019 Davis moved to compel arbitration of various new claims she was trying to assert against Sathre, Schooler, and WFP Securities, as well as requests to stay Sathre's efforts to enforce the judgment against her and to vacate certain abstracts of judgment and notices of lien. The trial court denied Davis's motion to compel arbitration, and Davis appealed. We held that the trial court erred in denying Davis's motion to compel arbitration of her tort claims, but that the court did not err in denying some of her other requests for relief. (*WFP Securities, Inc. v. Davis* (May 14, 2021, B304048) [nonpub. opn.].)

C.	*The Trial Court Denies Davis's Motions To Vacate the Renewal of Judgment*

All this took time, and the clock was ticking on the 2012 judgment. So, on June 7, 2022 Sathre filed an application for renewal of judgment under section 683.110, and the clerk of the court renewed the judgment. A few days later, Sathre filed an amended application for renewal of judgment to correct some typographical errors in the original application. On July 8, 2022 the court granted Sathre's amended application, and on July 14, 2022 the court entered a signed order granting the amended application.

Davis filed motions to vacate both the original renewal of judgment and the amended renewal of judgment. The trial court denied both motions. Davis timely appealed from the orders denying both motions.[4]

## DISCUSSION

A. *Applicable Law and Standard of Review*

A money judgment is enforceable for 10 years from the date of its entry and may be renewed for another 10 years. (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 200-201.) A "judgment creditor has two distinct methods by which to continue to pursue collection of a judgment as it nears expiration of the 10-year period of enforceability: the renewal of judgment provisions set forth in section 683.110 et seq., or an independent action on the judgment. Although the two methods are distinct, the defenses available to the judgment debtor in the statutory procedure are the same as in an independent action on the judgment." (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 260-261.) The trial court may vacate a renewal of a judgment "on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed

---

[4]     "The renewal of a judgment is *not* an appealable event . . . because there is no separate entity called a renewed judgment. . . . Instead, it is the order denying a motion to vacate renewal of a judgment that is appealable, as an order after (the underlying) judgment." (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 262, fn. 4, internal quotation marks omitted.)

judgment . . . is incorrect." (§ 683.170, subd. (a); see *Altizer v. Highsmith* (2020) 52 Cal.App.5th 331, 339.)

"In an independent action on a judgment, the debtor may challenge the judgment 'in accordance with the rules and principles governing collateral attack.'" (*Goldman v. Simpson*, *supra*, 160 Cal.App.4th at p. 261.) "Collateral attack is proper to contest lack of personal or subject matter jurisdiction or the granting of relief which the court has *no power* to grant [citations]. Nonjurisdictional errors, however, are not appropriate procedural targets within this context." (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950; see *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [when "a court has fundamental jurisdiction, but acts in excess of its jurisdiction," its judgment should be challenged directly and is "generally not subject to collateral attack once the judgment is final"].)

Section 683.170 is derived from section 1710.40, which governs motions to vacate judgments entered in California based on judgments from other states. (*Fidelity Creditor Service, Inc. v. Browne*, *supra*, 89 Cal.App.4th at p. 202.) Section 1710.40 contains language similar to section 683.170: It provides a judgment "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment . . . ." (§ 1710.40, subd. (a).) The Law Revision Commission comment to section 1710.40 lists common defenses to enforcement of a sister state judgment: "the judgment is not final and unconditional . . . ; the judgment was obtained by extrinsic fraud; the judgment was rendered in excess of jurisdiction; the judgment is not enforceable in the state of rendition; the plaintiff is guilty of misconduct; the judgment has already been paid; suit

on the judgment is barred by the statute of limitations in the state where enforcement is sought."  (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1710.40, p. 385.)

In the trial court Davis had the burden of proving, by a preponderance of the evidence, she was entitled to vacate the renewal of judgment under section 683.170, subdivision (a).  (See *American Contractors Indemnity Co. v. Hernandez* (2022) 73 Cal.App.5th 845, 848; *Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161.)  On appeal from an order denying a motion to vacate a renewal of judgment under section 683.170, "we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion."  (*Fidelity Creditor Service, Inc. v. Browne, supra*, 89 Cal.App.4th at p. 199.)  We independently review issues of law.  (*Hernandez*, at p. 848.)

B.     *The Trial Court Did Not Err in Denying Davis's Motions To Vacate the Renewal of Judgment*

1.     *Davis Has Not Shown the Trial Court Misunderstood Its Discretion To Rule on Davis's Motions To Vacate the Renewal of Judgment*

Davis contends the trial court "summarily dismissed" her arguments "without exercising discretion" and denied her motions "based not on law but on the history of the matter."  The record does not support Davis's argument.

In denying Davis's motion, the trial court stated:  "This is a motion to vacate a renewal of judgment.  The judgment itself was entered on June 16, 2012.  The Court of Appeal affirmed the judgment on April 15, 2014.  I renewed the judgment . . . at the

10-year mark in June of this year.  I read the motion.  I read the opposition.  There is no reason for me to vacate the renewal of this judgment."  Davis asked:  "Is that just based solely on the facts that the Court of Appeal affirmed the original judgment or is that based on the arguments made in the papers?"  The court stated:  "It's based upon the arguments made in the papers."  Davis stated the court had not issued a tentative ruling and asked whether the court could "provide a little more specificity" in its ruling.  The court stated:  "No, I really can't. . . .  This matter I didn't believe required a tentative because it's so clear that an award entered in this arbitration, confirmed by a judgment, affirmed on appeal, in existence for 10 years and now renewed doesn't require a lot of explanation.  But the explanation is, in this case, amply provided in the opposition."  Similarly, in denying Davis's motion to vacate the amended renewal of judgment, the trial court stated:  "I've read the motion with the opposition to the motion.  My ruling is based upon the points made in the opposition to the motion."  Contrary to Davis's argument, the record indicates that the trial court understood its authority and that the court decided Davis had not met her burden to show she was entitled to vacate the renewal of judgment under section 683.170.

> 2.    *The Judgment Was Not Obtained by Extrinsic Fraud*

Davis argues the trial court should have vacated the renewal of judgment because the judgment was obtained by extrinsic fraud.  Davis contends that, at the time of the arbitration, FINRA was investigating WFP Securities, that information uncovered in the investigation would have proven

9

Davis's claims, and that Sathre and his lawyer fraudulently concealed the information during the arbitration. This argument does not justify vacating the renewal of judgment based on extrinsic fraud.

"Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. . . . The essence of extrinsic fraud is one party's preventing the other from having his day in court." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067; see *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 844.) "Normally, if the party was aware of the proceeding, the fraud is intrinsic, but if the fraud totally precluded his raising a claim or defense it will be grounds for relief." (*Los Angeles Airways, Inc. v. Hughes Tool Co.* (1979) 95 Cal.App.3d 1, 7.) Extrinsic fraud is a defense to enforcement of a judgment; intrinsic fraud is not. (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 970; *Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 827.)

Davis argues several pieces of evidence from the FINRA investigation "would have proven [her] claims." She cites Schooler's testimony that "there was no hard and fast rule" regarding the "percentage of a client's portfolio that could be put to private placements" and that WFP Securities did not have "guidelines on how a customer's portfolio should be allocated." Davis also cites a finding in the settlement between FINRA and Warren Rees Horney (WFP Securities' Senior Vice President of Due Diligence) that, although Horney was "responsible for reviewing and approving the suitability of private placement and

10

REIT[5] recommendations by [WFP Securities'] representatives," Horney never used the company's database of customers' prior transactions "in assessing the suitability of any particular recommendation."

Davis has not shown extrinsic fraud. First, Davis did not identify specific facts demonstrating Sathre or his attorney, Brandon Reif, fraudulently withheld the information. (See *Singh v. Lipworth*, *supra*, 227 Cal.App.4th at p. 827 ["where a party seeks 'equitable relief based upon extrinsic fraud in obtaining a judgment, the facts constituting the fraud must be pleaded with particularity and specificity'"]; *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 831 [same].) She does not cite any evidence the arbitrators required Reif or Sathre to produce the FINRA information to Davis.[6]

---

5   REIT is an acronym for Real Estate Investment Trust. (*Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1101.) It is "'an investment vehicle that enables large numbers of investors to pool their capital and share in the benefits of real estate investment and financing.'" (*Norfolk Southern Ry. Co. v. Pittsburgh & West Virginia Railroad* (3d Cir. 2017) 870 F.3d 244, 249, fn. 3.)

6   Davis repeatedly quotes Reif's statement during the arbitration that the arbitrators "gave a very comprehensive discovery order to produce . . . everything that you guys have," but Davis does not cite a discovery order. Reif's vague statement the arbitrators ordered the parties to produce "everything" does not establish Sathre had to produce FINRA investigation testimony or settlements. Nor has Davis established Sathre or Reif had custody or control of the documents during the arbitration. Although Schooler testified in the FINRA

Second, even if Reif wrongfully withheld the FINRA investigation testimony, such conduct would not justify vacating the renewal of judgment.  Concealing evidence is intrinsic fraud, not extrinsic fraud.  (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 10 ["After the time for seeking a new trial has expired and any appeals have been exhausted, a final judgment may not be directly attacked and set aside on the ground that evidence has been suppressed, concealed, or falsified; in the language of the cases, such fraud is 'intrinsic' rather than 'extrinsic.'"]; *Los Angeles Airways, Inc. v. Hughes Tool Co.*, *supra*, 95 Cal.App.3d at p. 8 [plaintiff alleged intrinsic fraud, not extrinsic fraud, where the plaintiff "was not totally deprived of an opportunity to present its claim, but rather its claim was allegedly not as strong as it might have been if it had then had available the documents which were allegedly concealed"].)

Third, even if information from the FINRA investigation would have been helpful to Davis's case, she has not demonstrated the evidence would have resulted in a more favorable outcome in the arbitration.  (See *Casey v. Hill*, *supra*, 79 Cal.App.5th at p. 981 ["a claim of extrinsic fraud is not available unless the defense the party was prevented from asserting is a meritorious one"]; *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 664 ["to set aside a final order based on extrinsic fraud, 'the moving party must demonstrate that he or she has a meritorious case'"].)  The FINRA investigation documents may have shown WFP Securities lacked adequate practices and procedures for appropriately allocating its clients'

---

investigation in July 2010, one year before the arbitration, FINRA did not file the disciplinary action against Horney until April 2013, more than one year after the arbitration.

funds between safer and riskier investments and for ensuring its representatives' recommendations were suitable for the client. But that evidence did not establish Sathre, Schooler, or WFP Securities was liable to Davis on any of her causes of action. None of the FINRA investigation documents Davis cites mentions Davis, Sathre, or the investments Sathre recommended for Davis. The record shows the FINRA examiner questioned Sathre and Schooler about other clients' investments, but not Davis's. Similarly, FINRA's settlement with Horney includes a finding WFP Securities representative Tom English "made multiple unsuitable recommendations for the purchase of speculative and illiquid private placements and non-traded REITS to seven households, in violation of NASD Conduct Rules 2310 and 2110." But the settlement does not mention Sathre.

Finally, the arbitration award contains findings adverse to Davis that would not have been affected by evidence WFP Securities lacked appropriate procedures to ensure clients invested in suitable investments. For example, the arbitrators found that, because Davis testified she read the risk factors in the private placement memorandum for one of the investments at issue, Davis was "on notice that the investments" Sathre recommended to her "involved substantial risks." In addition, the arbitrators ruled Davis's causes of action were time-barred. The evidence from the FINRA investigation would not have overcome that defense.[7]

---

[7] Davis also argues Sathre and Schooler committed perjury by testifying at the arbitration "that they had a reasonable basis for recommending the investments, that they adequately supervised and performed due diligence, and that they had

13

### 3. *The Trial Court Had Jurisdiction To Confirm the Arbitration Award and Enter Judgment*

Davis argues the judgment (and therefore its renewal) is void ab initio because the trial court lacked jurisdiction in 2012 to confirm the arbitration award and enter judgment. Davis contends "FINRA Rules" give federal district courts exclusive jurisdiction to enforce FINRA arbitration awards, but she cites no such rule. In fact, rule 12904(a) of the FINRA Code of Arbitration Procedure for Customer Disputes states an arbitration award "may be entered as a judgment in any court of competent jurisdiction." Similarly, the parties' agreement to submit the dispute to arbitration states "the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment."

The trial court was a court of competent jurisdiction. Under section 1293 the "making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to enforce such agreement . . . by entering of judgment on an award under the agreement." (See *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 503 [section 1293 "gives California courts personal and subject matter jurisdiction to compel arbitration and to enforce arbitral

---

proper guidelines in place to comply with the securities laws," but by testifying differently in the FINRA investigation. She contends the false testimony, which typically is intrinsic fraud, was extrinsic fraud because Sathre and Schooler owed her a fiduciary duty. Sathre argues the arbitrators found he did not owe Davis a fiduciary duty. We need not decide whether Sathre or Schooler was a fiduciary because Davis has not demonstrated either one testified falsely at the arbitration.

14

awards when a contract to arbitrate is made in this state"]; *Casey v. Hill*, *supra*, 79 Cal.App.5th at p. 970 ["parties to an agreement to arbitrate in California consent to the jurisdiction of California courts for the limited purpose of enforcing the arbitration agreement and any resulting award" (italics omitted)]; see, e.g., *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1414-1415 [trial court did not err in confirming an arbitration award and entering judgment in favor of an insured, even though the insurer had filed a petition in federal district court to vacate the award].)

Davis lived in California when she invested with WFP Securities, whose principal place of business was in California. The arbitration took place in California. The trial court had jurisdiction to confirm the award, enter judgment, and enforce the judgment.

#### 4. *The Arbitration Agreement Was Not Void*

Davis argues the judgment is void because the direct participation program (DPP) contracts (the investments she purchased through Sathre) were void. Davis contends the DPP contracts were void because Sathre and WFP Securities did not fulfill "the requirements of the Securities Exchange Act of 1933 or FINRA suitability requirements to offer or to sell private placement investments." From that premise, Davis argues (1) because the contracts were void, the arbitration agreements in the contracts were void; (2) because the arbitration agreements were void, the arbitration award was void; and (3) because the award was void, the judgment was void.

By raising this argument for the first time on appeal, however, Davis forfeited it. (See *Westsiders Opposed to*

15

*Overdevelopment v. City of Los Angeles* (2018) 27 Cal.App.5th 1079, 1091 [an appellate court will not consider "issues or theories not properly raised or presented in the trial court"]; *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913 ["As a general rule, an appellate court will not review an issue that was not raised by some proper method by a party in the trial court."].)  Indeed, if Davis believed the DPP contracts and their arbitration agreements were void, she should have raised the issue before the parties submitted the matter to arbitration in 2010.  (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31 [a party contending an arbitration agreement is illegal must raise the issue "prior to participating in the arbitration process"]; *Brawerman v. Loeb & Loeb LLP* (2022) 81 Cal.App.5th 1106, 1115, fn. 2 ["illegality of an entire contract for purposes of avoiding arbitration *cannot* be raised for the first time on appeal" and "must be raised for the first time in the trial court *before* the matter is sent to arbitration"].)

The argument is also meritless.  Davis offers no authority or rationale for her contention the investment contracts were void.  She does not, for example, argue the contracts violated a particular statute or rule.  (Cf. *Duffens v. Valenti* (2008) 161 Cal.App.4th 434, 441 [matchmaking agreements were void and unenforceable because they "violated express requirements of the dating service statutes" in Civil Code section 1694 et seq.].)  Although Davis says she is arguing the judgment is void, she is actually relitigating her claims Sathre violated various tort, contract, or statutory duties when he sold her the investments.  These arguments, which the arbitrators rejected, are not defenses to an action on a judgment.

5.    *Davis's Other Arguments Are Not Defenses to an Action on the Judgment*

The remainder of Davis's arguments are not appropriate grounds to vacate a renewal of judgment.  As discussed, under section 683.170, subdivision (a), Davis may only raise defenses to an action on the judgment.  She may not relitigate her underlying causes of action or challenge the conduct of the arbitration. (See *Goldman v. Simpson, supra,* 160 Cal.App.4th at p. 262 [in an action on a judgment, a debtor may not raise nonjurisdictional errors]; see also *Casey v. Hill, supra*, 79 Cal.App.5th at p. 977 ["section 1710.40 does not create an opportunity to raise defenses to the merits of the underlying claims resolved in the sister state judgment"].)

For example, Davis argues the arbitrators erred in awarding costs of food, travel, and expert fees and in ruling her causes of action were barred by the statute of limitations.  Davis could have raised those arguments in the arbitration or in her motion to vacate the arbitration award 12 years ago.[8]  They are not jurisdictional issues, they are not defenses to an action on the judgment, and they are not grounds to vacate a renewal of judgment.

Davis also argues the arbitrators denied her the right to cross-examine Sathre and Schooler during the hearing on their

---

[8]    Not that these arguments necessarily would have been grounds to vacate the arbitration award.  Judicial review of arbitration awards is narrow.  (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33; *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1362.)  Courts may not review arbitrators' decisions for errors of fact or law.  (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 11; *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 354.)

requests for expungement of their CRD records. Davis cites *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, where the court affirmed orders denying a brokerage firm's petition to confirm an arbitration award and granting a client's petition to vacate the award because the arbitrators refused to hear the client's evidence during an expungement proceeding. (*Id*. at p. 1096.) In her motion to vacate the arbitration award, Davis could have argued the arbitrators' refusal to hear evidence material to the controversy substantially prejudiced her rights under section 1286.2, subdivision (a)(5). However, the argument is not a defense to an action on the judgment and is not a basis for vacating a renewal of judgment.

Next, Davis asserts her attorney at the arbitration did not comply with discovery orders and did not hire a replacement expert after the arbitrators excluded her expert as a discovery sanction. Davis argues her attorney's neglect amounted to "positive misconduct" and "extrinsic mistake" warranting equitable relief. Davis, however, cites no authority supporting her assertion an attorney's misconduct during an arbitration is a basis for vacating a renewal of judgment. The cases Davis cites address the impact of attorney misconduct in other contexts. For example, in *Daley v. County of Butte* (1964) 227 Cal.App.2d 380 the trial court dismissed an action for failure to prosecute and denied the plaintiff's motion to vacate the dismissal on the ground of mistake, inadvertence, surprise, and excusable neglect under section 473. (*Daley*, at pp. 383, 388.) The court in *Daley* reversed, concluding the trial court abused its discretion in denying the motion to vacate because counsel for the plaintiff's "consistent and long-continued inaction was so visibly and inevitably disastrous, that his client was effectually and

18

unknowingly deprived of representation." (*Id.* at pp. 391, 396.) The case has no bearing on a motion to vacate a renewal of judgment.[9]

### C. *Any Ambiguity in the Date of Renewal Does Not Prejudice Davis*

Finally, Davis argues that "there are two renewals" and that the "amended renewal of judgment should be deemed the operative renewal and the original mooted." As discussed, after the trial court renewed the judgment on June 7, 2022, Sathre filed an amended application for renewal of judgment to correct typographical errors. The court ordered the judgment renewed a second time on July 14, 2022. Davis asks this court "for a ruling as to which application is operative." Sathre contends that the judgment was renewed on July 14, 2022 and that there is no ambiguity.

To the extent there is any ambiguity regarding the date the judgment was renewed, Davis has not shown any prejudice. Even if the court renewed the judgment twice, there is only one judgment. After a party renews a judgment, "there is no separate entity called the 'renewed judgment.' There is simply 'the judgment,' which remains enforceable for an additional period . . . , but the rights of the judgment creditor arise from the underlying judgment." (*Jonathan Neil & Associates, Inc. v. Jones*

---

[9] Davis also cites *In re Marriage of Park* (1980) 27 Cal.3d 337, where the Supreme Court held the trial court erred in denying a party's motion to vacate a judgment of dissolution of marriage entered after she was deported, leaving her unable to attend the proceeding or contest the action. (*Id.* at p. 343.) That case has no relevance here.

19

(2006) 138 Cal.App.4th 1481, 1487; see *Goldman v. Simpson*, *supra*, 160 Cal.App.4th at p. 262 ["The renewed judgment 'has no independent existence' from the original judgment."].)

**DISPOSITION**

The orders denying Davis's motions to vacate the renewal of judgment are affirmed.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.

20