Filed 2/2/26  Kokinos v. Hill CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| POLYXENE G. KOKINOS, M.D., A.P.C., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BRADLEY HILL, <br><br> Defendant and Respondent. | H052224 <br> (Santa Clara County <br> Super. Ct. No. 23CV418527) |

This appeal arises from a business dispute between a vascular surgeon and the clinic in Campbell at which he practiced.

After departing the clinic at the end of 2019, Dr. Bradley Hill submitted a demand in arbitration pursuant to the terms of his practice agreement with Polyxene G. Kokinos, M.D., A.P.C. (Kokinos)—the professional corporation which owned and operated the clinic—asserting that Kokinos had failed to pay him his 50 percent share of net revenues for 2019.

After Kokinos filed a counterclaim alleging that Dr. Hill had breached their practice agreement, an arbitrator awarded Dr. Hill $979,425.90 in May 2023.  Kokinos filed a petition to vacate the award in June 2023, and Dr. Hill later filed a petition to confirm the award.  The trial court denied Kokinos's petition and granted Dr. Hill's.

Kokinos argues on appeal that it was deprived of due process in the arbitration proceedings, and that the arbitrator was biased against it.  As a result, it contends, the trial

court erred by not vacating the award pursuant to the grounds set forth in Code of Civil Procedure section 1286.2, subdivision (a).[1]

Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Surgery clinic and arbitration agreement*

Kokinos is a professional corporation doing business as the South Bay Vascular Center and Vein Institute in Campbell (SBVC). Dr. Polyxene G. Kokinos is a vascular surgeon and owner of SBVC.[2]

In 2019, Dr. Hill joined SBVC as a vascular surgeon, pursuant to the terms of a physician practice agreement he and Kokinos executed in November 2018 (the agreement). Among other things, the agreement included an arbitration clause which provided: "Any dispute or controversy arising between [Dr. Hill] and [Kokinos] ("*Claims*") relating to the validity, enforcement, performance, or interpretation of this Agreement, including a dispute pertaining to the validity or enforceability of this provision (including claims by [Dr. Hill] against the Practice's officers, directors, shareholders, partners, employees, or agents), as long as such Claims would otherwise be subject to a lawsuit in court, will be settled by binding arbitration under, and in accordance with, the then current National Rules for the Resolution of Employment Disputes ("*Rules*") of the American Arbitration Association ("AAA"), to the extent such rules do not conflict with this Agreement. [Dr. Hill] and [Kokinos] understand that, by entering into this Agreement, they are waiving their rights to a jury trial in a court of law."[3]

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] We refer to the appellant professional corporation as "Kokinos," and to the vascular surgeon—who is not a party to this action—as "Dr. Kokinos."

[3] There is no evidence in the record that the agreement was presented to the trial court in its entirety. Instead, the record reflects that the agreement was presented to the arbitrator, but only select portions of it were provided to the trial court. Accordingly, as (continued)

The agreement also provided that Dr. Hill's compensation would consist of 50 percent of the "net collected revenue from the combined operations of [SBVC] from [his] first day at the practice, anticipated to be January 3, 2019." That did not include any revenue "collected by the practice for billings submitted prior to January 2019 and which may post in this same period."

The agreement specified that "net revenue" would be determined by subtracting qualified business expenses that were "required to continue the current function of the practice." It also included a detailed, but non-exclusive, list of such qualifying expenses that would be subtracted from SBVC's total revenue to determine the net revenue, which would then be divided equally between Dr. Kokinos and Dr. Hill.

**B. Dispute and arbitration demands**

Dr. Hill left SBVC after 2019. On January 20, 2020, he filed a demand in arbitration with the AAA, alleging that Kokinos had breached the agreement by failing to pay him 50 percent of the net revenue for 2019. Dr. Hill sought $999,999 in damages, in addition to unspecified amounts for attorney fees, arbitration costs, and interest.

Kokinos asserted counterclaims, alleging that Dr. Hill had breached the agreement by failing to devote equivalent time and effort to the practice, failing to provide administrative services, not properly documenting and coding procedures he performed, and taking paid time off in excess of the amount provided for in the agreement.

**C. Arbitration stipulation**

Early in the arbitration process, the parties agreed to use a neutral forensic accounting expert (expert) to examine Kokinos's books and records. The expert would calculate SBVC's total revenue and all qualifying business expenses, subtracting the

we explain below, the entire agreement is not part of the record on appeal, notwithstanding Kokinos's improper inclusion of it in its appellant's appendix. Citations to the agreement in this opinion are limited to the portions of it which were presented to the trial court.

latter from the former to determine what, if anything, Kokinos owed Dr. Hill. The retention of the expert and the scope of her services were memorialized in a stipulation the parties executed on August 20, 2020 (stipulation).

Among other things, the stipulation provided that the expert could request records from the parties, who were required to produce them within 20 days of the requests and to respond to any questions from the expert within 10 days. The expert would provide the parties a draft report on her findings, to which the parties could submit any objections or additional facts within 10 days. The expert would then consider the information from the parties and prepare her final report, which the parties could also challenge, although those challenges were to be limited to objections that had been made to the draft report.

The stipulation also provided that Kokinos agreed to waive three of its counterclaims, preserving only its claim that Dr. Hill had taken paid time off in excess of the amount provided for in the agreement—a claim that could not be resolved by the expert.

### D. Forensic accounting investigation

During the course of the expert's accounting investigation, numerous disputes arose between the parties, resulting in nine discovery orders issued by the arbitrator.[4]

The expert ultimately issued her draft report on February 19, 2022. Pursuant to the terms of the stipulation, the parties submitted objections, additional information, and responses to the expert's questions.

One dispute in particular stemmed from the expert's discovery of a check written by Dr. Kokinos on a separate bank account that Kokinos had failed to disclose to the expert, entitled "IVT – Kokinos, Polyxene" (the IVT account). The expert's subsequent

---

[4] There is no evidence in the record that the discovery orders—save one—were presented to the trial court. Therefore, those orders are not part of the record on appeal, notwithstanding Kokinos's improper inclusion of them in its appellant's appendix.

4

investigation found that Kokinos had deposited $311,167.78 of revenue into the IVT account for procedures performed in 2019.

Kokinos utilized a software system called AdvancedMD for its billing and revenue management. Because the expert had not previously worked with AdvancedMD system, the arbitrator ordered the parties to retain a consultant who specialized in the software system to assist the expert with her investigation.

The expert issued her final report on April 14, 2023. The report summarized Kokinos's total 2019 revenues and qualified business expenses and concluded that Dr. Hill had been underpaid by $737,508.42. The parties then submitted responses or objections to the final report. Dr. Hill urged the arbitrator to adopt the final report, while Kokinos urged the arbitrator "to completely reject the Final Report on the basis that [the expert] was biased towards Dr. Kokinos, to schedule an evidentiary hearing so that [Kokinos] could cross-examine [the expert], or in the alternative, for the Arbitrator to recuse herself on the basis that she 'has been so badly influenced by communications from the prejudiced and biased forensic accountant.' "

### E.  May 2023 letters

On May 4, 2023, counsel for Kokinos submitted a letter to the arbitrator in which, among other things, they purported to "renew [their] demand for a full evidentiary hearing at which [they] will be able to present appropriate unbiased evidence to address the many failings of the biased forensic accountant."

The next day, May 5, 2023, the manager of ADR services for the AAA sent a letter to the parties stating that "the hearing in the above-entitled matter has been closed by the arbitrator on May 2, 2023," and that the arbitrator would issue her final award by June 1, 2023.

The following week, on May 11, 2023, counsel for Kokinos submitted another letter to the arbitrator, demanding that she withdraw from the matter based on prejudice and bias against Dr. Kokinos. The letter stated in part: "It is apparent that you have

5

determined that you will not let us submit evidence to support our position, including testimony from a qualified forensic accountant and that you have determined not to hold a hearing." Further, it stated: "As we previously noted, we believe that [the expert] should be disqualified and her report should absolutely be ignored. We will be submitting further evidence to you documenting why what she has done is inappropriate and is blatantly prejudiced against our client." Finally, the letter stated that "the analysis that has been done is absolutely wrong and inconsistent with the [agreement] that is the subject of this dispute."

### F. *Arbitrator's final award*

The arbitrator issued the final award on May 23, 2023 (final award). The final award addressed several categories of Kokinos's arguments and objections to the expert's final report.

First, Kokinos had argued that the expert had improperly included revenue generated from certain "independent activities" as part of its profit-sharing calculations. The arbitrator rejected the argument, concluding that, because the revenue had been processed using the AdvancedMD system, it was necessarily subject to profit sharing. The parties' agreement provided that, to the extent either physician engaged in independent activities, he or she should have been paid directly—as a result, the arbitrator concluded, "[t]he fact that revenue from this activity appeared in AdvancedMD means that it is subject to revenue sharing."

Second, Kokinos had argued that the expert had not subtracted from the total revenue share calculation certain expenses and payments made to two other physicians at SBVC. The arbitrator rejected the argument because Kokinos had failed to provide any supporting documentation, despite the expert's requests.

Third, Kokinos had argued that numerous expenses were incorrectly labeled as personal expenses, rather than as qualifying business expenses. The arbitrator rejected this argument as well because Kokinos had either failed to respond to the expert's

6

questions and requests for additional information or failed to provide supporting documentation.

Fourth, Kokinos had similarly argued that various other expenses had been improperly classified as non-qualifying expenses. With one exception—which was accordingly added as a qualifying business expense—the arbitrator concluded that the existing documentation supported the expert's classification of the expenses.

Fifth, Kokinos had argued that various expenses had been incorrectly classified as non-2019 expenses and therefore had not been subtracted from the total revenue. The arbitrator rejected the arguments either because Kokinos had provided no supporting documentation, or because the arguments were not credible.

Sixth, Kokinos had argued that certain expenses had been omitted from the expert's analysis altogether. The arbitrator noted that the expert had accepted most of those arguments and had made corresponding adjustments in the final report.

Seventh, Kokinos had argued that the expert had understated various medical supply expenses. However—with one exception for which the expert adjusted the final award—the arbitrator determined that Kokinos had failed to maintain contemporaneous records or provide supporting documentation, so the amounts claimed were not verifiable.

Eighth, Kokinos had argued that the expert should have subtracted, as qualifying business expenses, the salary and benefits paid to Dr. Kokinos's husband, Michael Kokinos, beginning in July 2019. The arbitrator concluded that the evidence showed Mr. Kokinos was the landlord for SBVC, but had never received any salary or benefits before 2019, despite having performed the same work. Because the agreement defined "qualifying expenses" as those "required to continue the current function of the practice," the arbitrator concluded it did not cover the payments made to Mr. Kokinos.

Ninth, Kokinos had argued that the expert should have subtracted petty cash expenses. The arbitrator rejected the argument, noting that SBVC did not keep a petty

cash log, and that Kokinos had otherwise failed to respond to the expert's inquiry about the issue.

The arbitrator also summarized additional objections to the expert's final report which Kokinos had failed to raise in response to the draft report, and which the arbitrator therefore declined to consider.[5]

In conclusion, the arbitrator rejected Kokinos's claim that the expert was biased and denied his requests to schedule an evidentiary hearing and for the arbitrator to recuse herself.  She awarded Dr. Hill a total of $894,443.54 in damages and interest, as well as post-award, pre-judgment interest to be determined pursuant to Civil Code section 3287, subdivision (a).

In response to a subsequent request for modification by Dr. Hill to correct a computational error, the final award was modified on June 5, 2023, to a final amount of $979,425.90, plus "post-award, pre-judgment interest in an amount to be determined, at the statutory rate of 10%, based on the compensatory damages amount of $731,213.86, which equates to $200.33 per diem."

### G. Petitions to vacate and confirm the final award

On June 28, 2023, Kokinos filed a petition to vacate the final award, pursuant to section 1286.2, subdivision (a).

First, Kokinos argued that vacatur was required pursuant to section 1286.2, subdivision (a)(6)(B), because the arbitrator refused to honor Kokinos's timely demands for disqualification of her and the expert.[6]  According to Kokinos, both the arbitrator and

---

[5] In addition to directly addressing Kokinos's arguments and objections, the arbitrator also stated that the parties had agreed to waive oral hearings, and that Kokinos had "agreed to dismiss" its final counterclaim.  As discussed below, Kokinos disputes those two assertions on appeal.

[6] Section 1286.2, subdivision (a)(6)(B), provides that a court shall vacate an arbitration award if it determines that the arbitrator was subject to disqualification upon grounds specified in section 1281.91, but failed upon receipt of timely demand to disqualify herself.

the expert were biased against it, and the arbitrator's rulings unfairly and substantially prejudiced Kokinos's ability to fairly present its claims and defenses.

Specifically, Kokinos argued that the arbitrator's bias was "obvious in the final award." Kokinos disputed the arbitrator's statement that it had agreed to waive oral hearings and argued that the expert and arbitrator became biased and suspicious of Kokinos after discovering the separate IVT account. And Kokinos challenged the arbitrator's conclusions that it had failed to provide sufficient supporting documentation or otherwise respond to the expert's inquiries.

Second, Kokinos argued that it was substantially prejudiced because it was not able to present evidence material to the controversy, in violation of section 1286.2, subdivision (a)(5).[7] Specifically, Kokinos argued that the arbitrator wrongfully denied his request to submit key documents, and declined to hold an evidentiary hearing.

Dr. Hill opposed Kokinos's petition to vacate the final award and separately filed a petition to confirm it. He argued that Kokinos had presented no evidence of bias, partiality, or prejudice under a reasonable person standard, and that Kokinos had been afforded the opportunity to be heard and present evidence material to the controversy.

Among the documents submitted in support of Dr. Hill's petition was a declaration from his attorney regarding Kokinos's final counterclaim. The attorney attested that she and counsel for Kokinos had met with the arbitrator on February 24, 2022, to discuss whether that counterclaim was "still going forward." According to Dr. Hill's attorney, the arbitrator had requested that, if Kokinos intended to proceed with that counterclaim, the parties meet and confer regarding a discovery schedule and potential hearing date. Kokinos's attorney had stated that "she would talk with her client, and agreed to advise

---

[7] Section 1286.2, subdivision (a)(5), provides that a court shall vacate an arbitration award if it determines that "[t]he rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

9

the arbitrator by [March 11, 2024,] regarding whether or not the claim remains, and if the parties were able to agree regarding a discovery schedule and hearing date." However, Dr. Hill's attorney attested, she never received any notice or meet and confer from Kokinos's counsel regarding the final counterclaim, so she believed it had been waived.

### H. Trial court order

On April 11, 2024, the trial court held a hearing on the parties' respective petitions to vacate and confirm the final award. The next day, the court issued its order denying Kokinos's petition and granting Dr. Hill's petition (order).

The court determined that Kokinos had "failed to establish any arbitral bias" by the arbitrator or expert "under any objective standard," and had failed to demonstrate that its rights were substantially prejudiced by the arbitrator's refusal to allow an evidentiary hearing or hear evidence material to the controversy.

The trial court began by noting that it agreed with Dr. Hill's argument that "much of Kokinos's argument and evidence supporting its Petition to Vacate relates to its disagreement with the merits of the Arbitrator's decision, [yet] the court lacks authority to review the merits of the Arbitrator's decision, including the Arbitrator's interpretation of the law and the evidence." Accordingly, the court addressed "only the limited grounds on which it is statutorily authorized to review an arbitration award under section 1286.2 (that were raised by Kokinos)."

The court rejected the argument that the arbitrator and expert were biased against Kokinos. It specifically addressed Kokinos's claim that the arbitrator and expert had become biased and suspicious following discovery of the IVT account, determining that the incident did not constitute objective evidence of bias, because any reasonable accounting expert or arbitrator would be suspicious of a party who failed to disclose a bank account with hundreds of thousands of dollars of deposits.

The court also addressed Kokinos's claim that the arbitrator's bias was evident in her finding that Kokinos had failed to present sufficient documentation to support its

contentions. According to the court, that did "*not* evince the appearance of bias or personal animus, but merely an independent arbitrator and accounting expert acting within the bounds of its functions."

The court also rejected Kokinos's argument that the expert's conduct was substantially prejudicial, because it was "essentially asking the Court to review the arbitrator's interpretation of the underlying agreement between the parties." As the court explained, the stipulation did not include any requirement that oral evidence be allowed, and "[h]ad the parties wished for that avenue to be available, it stands to reason that they would have included it in the Stipulation." The arbitrator's refusal to allow for the presentation of oral evidence was a plausible interpretation of the stipulation and did not represent substantial prejudice towards Kokinos.

Further, the court held that the arbitrator's obligation to "hear evidence" pursuant to section 1286.2, subdivision (e), "does not mean that the evidence must be orally presented or that live testimony is required." Instead, it explained, "[t]he parties may be heard on the papers rather than at a live hearing," citing *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092, 1108 (*Royal Alliance*).

With respect to Kokinos's contention that it had never agreed to waive its final counterclaim, the trial court held that it was "refuted by the persuasive evidence submitted in the" declaration from Dr. Hill's counsel.

In sum, the trial court found that Kokinos had failed to demonstrate bias by the arbitrator and expert, or that it was substantially prejudiced by the arbitrator. It then calculated post-award, pre-judgment interest in the amount of $64,906.92, and entered judgment for Dr. Hill in the total amount of $1,044,332.80 (judgment).

Kokinos timely appealed.[8]

---

[8] Prior to filing the notice of appeal, Kokinos filed a motion for reconsideration in the trial court. However, Kokinos filed the notice of appeal before the hearing on the (continued)

## II. DISCUSSION

Kokinos argues on appeal that the trial court erred in denying its petition to vacate the final award because: (1) Kokinos was denied due process in the arbitration proceedings; (2) the arbitrator should have been disqualified due to bias and prejudice; (3) Kokinos was substantially prejudiced by the arbitrator's failure to hear or receive evidence or set a hearing; and (4) Kokinos did not waive an evidentiary hearing.

We address these arguments in turn below.

### A. Applicable law and standard of review

Judicial review of an arbitration award is extremely limited. (*Board v. Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 275; *SingerLewak LLP v. Gantman* (2015) 241 Cal.App.4th 610, 615 (*SingerLewak*).) By enacting the California Arbitration Act, set forth in Title 9 of the Code of Civil Procedure, the Legislature has expressed a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*) [judicial review must be minimized to ensure arbitral finality].)

"Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Moncharsh, supra,* 3 Cal.4th at p. 10 ["parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final"].) Courts generally may not review arbitration awards for errors of fact or law, "even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) Nor do courts review the validity of an arbitrator's reasoning. (*SingerLewak, supra*, 241 Cal.App.4th at p. 616.)

motion for reconsideration was scheduled, thereby divesting the trial court of jurisdiction to consider the motion. (*People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1757.)

12

Instead, judicial review of arbitration awards is limited to the grounds specified by statute, and awards may only be vacated based on the six enumerated circumstances set forth in section 1286.2, subdivision (a): "(1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision." (§ 1286.2, subd. (a).)

Judicial review is thus authorized only " 'in circumstances involving *serious problems* with the award itself, or with the fairness of the arbitration process.' " (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368 (*Heimlich*), quoting *Moncharsh, supra*, 3 Cal.4th at p. 12.) " ' "The statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding." ' " (*Heimlich, supra*, at p. 368, quoting *Pacific Vegetable Oil Corp. v. C. S. T., Ltd.* (1946) 29 Cal.2d 228, 240.)

" 'On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard.' " (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1217, quoting *Lindenstadt v. Staff Builders, Inc.* (1997) 55

13

Cal.App.4th 882, 892, fn. 7.)  However, to the extent a trial court's ruling rests upon a determination of disputed factual issues, we review for substantial evidence.  (*Ibid*.; see also *Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 750–751 [courts apply "highly deferential standard of review to the award itself"].)

"The party seeking to vacate an arbitration award bears the burden of establishing that one of the six grounds listed in section 1286.2 applies and that the party was prejudiced by the arbitrator's error."  (*Royal Alliance, supra,* 2 Cal.App.5th at p. 1106.)

### B.  Improper documents in appellant's appendix

As a preliminary matter, Kokinos included numerous documents in the appellant's appendix that were not before the trial court.  Such documents "cannot be included as part of the record on appeal and thus must be disregarded as beyond the scope of appellate review."  (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 (*Pulver*), superseded by statute on other grounds as stated in *Noori v. Bank of America, N.A.* (9th Cir. 2018) 710 Fed.Appx. 757, 758; see also, *Pacific Palisades Residents Assn., Inc. v. City of Los Angeles* (2023) 88 Cal.App.5th 1338, 1360 [disregarding documents not before the trial court and excluding them from appellate record].)  Any statements or arguments in Kokinos's briefs that are based on such documents must also be disregarded.  (*Pulver, supra*, at p. 632.)

Here, Kokinos included the following documents in its appellant's appendix, for which there is no evidence that they were before the trial court:  (1) the agreement; (2) the arbitrator's discovery orders, with the exception of discovery order No. 4; and (3) Kokinos's motion for reconsideration and supporting papers.

Although Dr. Hill argued in his respondent's brief that Kokinos had improperly included those documents in its appellant's appendix, Kokinos made no effort in its reply brief to rebut that argument or demonstrate that the documents had been before the trial court.

14

### C. Analysis

#### 1. Due process

Kokinos argues it was denied due process in the arbitration proceeding because the arbitrator refused to hold a hearing and failed to comply with her own discovery and scheduling orders.

With respect to the absence of a hearing during the arbitration process, Kokinos cites section 1282.2, subdivision (d), which provides: "The parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, but rules of evidence and rules of judicial procedure need not be observed. On request of any party to the arbitration, the testimony of witnesses shall be given under oath." (§ 1282.2, subd. (d).)

Kokinos appears to be arguing that this statute requires a live, in-person hearing to be held as part of the arbitration process. However, that is not the law. Instead, notwithstanding the language in section 1282.2, subdivision (d), parties to an arbitration proceeding "may be heard on the papers rather than at a live hearing." (*Royal Alliance, supra*, 2 Cal.App.5th at p. 1108, citing *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105.) Although arbitration procedures that interfere with a party's right to a fair hearing are reviewable on appeal, there is no requirement that a live, in-person evidentiary hearing be held. (*Royal Alliance, supra*, at p. 1105, citing *Hoso Foods, Inc. v. Columbus Club, Inc.* (2010) 190 Cal.App.4th 881, 888.) The absence of such a hearing in the arbitration process here did not constitute a denial of Kokinos's due process.

With respect to Kokinos's arguments regarding the arbitrator's alleged failure to comply with her discovery and scheduling orders, Kokinos cites to evidence not in the record. As discussed above, the cited discovery orders were not before the trial court when it ruled on the petitions to vacate and confirm the final award, cannot be included in

15

the record on appeal, and must be disregarded. (*Pulver, supra*, 182 Cal.App.3d at p. 632.)

Finally, Kokinos argues that it was denied due process when the arbitrator erroneously concluded Kokinos had waived its fourth counterclaim. As we explain in the following section, though, substantial evidence supports the trial court's finding that Kokinos had waived the counterclaim, and Kokinos has cited no evidence to the contrary.

### 2. *Arbitrator disqualification for alleged bias and prejudice*

Kokinos argues the trial court erred by not concluding that a reasonable person would have determined the arbitrator was biased against Kokinos. As support, it summarizes numerous examples of what it characterizes as blatant bias and prejudice, the totality of which should have led the trial court to vacate the arbitration award pursuant to section 1286.2, subdivision (a)(3), which provides that the court shall vacate the award if it determines that "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator."

" 'Misconduct' in this context of this statute includes actions that create a reasonable impression of possible bias." (*FCM Investments, LLC v. Grove Pham, LLC* (2024) 96 Cal.App.5th 545, 552–553 (*FCM*).) Under this standard, arbitrators " 'should be disqualified if a person aware of the facts might reasonably entertain a doubt that the arbitrator would be able to be impartial.' " (*Id*. at p. 555.) A showing of actual bias, though, is not required. (*Ibid*.) "Instead, the test is whether a hypothetical reasonable person (i.e., a disinterested, well-informed, thoughtful member of the public) would form *an impression of possible bias* on the part of the arbitrator." (*Ibid*.)

" 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 389, quoting *Betz v. Pankow* (1995) 31 Cal.App.4th 1503, 1511 (*Betz*).) "The test is objective and fact-specific; there is no bright-line demarcation for the impression of bias, and each case

16

must be considered in light of the particular facts involved." (*FCM, supra,* 96 Cal.App.5th at p. 555, citing *Betz, supra*, at p. 1508.)

Kokinos identifies eight distinct examples of alleged bias and prejudice by the arbitrator.

First, it argues, "[p]erhaps the most obvious evidence" of bias is the arbitrator's "false claim" that Kokinos had waived its fourth counterclaim, which had asserted that Dr. Hill had taken excessive time off from SBVC in violation of the agreement. Kokinos insists it never agreed to waive or dismiss the claim, and "it is telling that the Arbitrator did not specify an exact date or method by which Appellant allegedly dismissed this claim."

As summarized above, the trial court rejected Kokinos's argument regarding waiver of the counterclaim, noting that the argument was "refuted by the persuasive evidence submitted in the" declaration from Dr. Hill's attorney. In that declaration, Dr. Hill's attorney explained that, despite the arbitrator's direction to the parties to meet and confer if Kokinos intended to proceed with the counterclaim, and despite Kokinos's attorney's statement that she would discuss with her client and advise the arbitrator by March 11, 2024, no such meet and confer or advisement ever occurred.

Thus, Kokinos is incorrect when it states there was no evidence to support dismissal of Kokinos's fourth counterclaim. Kokinos also claims there was evidence to the contrary, showing that it did not waive its counterclaim. However, Kokinos cites only its motion for reconsideration and supporting declaration—documents which were not before the trial court when it ruled on the petition to vacate the final award, and which are not part of the record on appeal. As a result, we may not consider the argument.

Second, Kokinos argues that the arbitrator's failure to enforce discovery orders is evidence of bias. Again, though, those discovery orders were not before the trial court and are not part of the record on appeal, so we may not consider the argument.

17

Third, Kokinos cites the arbitrator's award of pre-judgment interest as evidence of bias. It argues that pre-judgment interest is precluded under Civil Code section 3287, subdivision (a), " 'where the amount of damages depends upon a judicial determination based upon conflicting evidence,' " citing *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1072–73.) That statute provides: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state." (Civ. Code, § 3287, subd. (a).)

Kokinos argues that pre-judgment interest was legally precluded here because the final award excluded "numerous categories of expenses," which shows that "a determination was required in order to confirm the principal balance owed."

However, Kokinos fails to identify any such "categories of expenses" that were excluded, or how the damages in the arbitration award were not certain. In fact, the arbitration award specified the amount of the award at precisely $979,425.90.

Moreover, to the extent Kokinos argues that pre-judgment interest is precluded in contractual arbitration, that is incorrect. "A prevailing party in arbitration is entitled to prejudgment interest as of the date of the final award to entry of judgment." (*Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, 21–22 [ordinarily, prevailing party "would be entitled to prejudgment interest from the date of the final arbitration award until the date the award is confirmed and judgment is entered"]; see also *Glassman v. Safeco Insurance Company of America* (2023) 90 Cal.App.5th 1281, 1319 ["prejudgment interest under [Civil Code] section 3287(a) is generally available in matters subject to contractual arbitration, even if only from the date of the final award, which itself becomes

18

a new contractual obligation or fixed liability regardless of the individual elements that comprised that liability, to entry of judgment"].)

Even if the arbitrator had made a legal error, that would not be a basis for vacating the arbitration award, absent evidence of bias. Although Kokinos insists that "[a]ny 'reasonable person' with only a small amount of knowledge about this subject would know that this award is just plainly punitive[]," in our view a reasonable person would not consider the arbitrator's award of pre-judgment interest here as evidence of bias. (*FCM, supra,* 96 Cal.App.5th at p. 555.)[9]

Fourth, Kokinos argues that the arbitrator again disregarded one of her own discovery orders when she allowed the expert to increase SBVC's revenue by including income in the IVT account, while not deducting expenses from that account. Because the discovery order is not part of the record on appeal, we may not consider the argument.

Fifth, Kokinos argues that the arbitrator misinterpreted the agreement by holding that all revenue appearing in AdvancedMD system must be included in the total revenue calculation for SBVC. Because the entire agreement is not part of the record on appeal, we may not consider the argument.

Sixth, Kokinos argues that the arbitrator improperly excluded certain expenses deemed "personal" from the list of qualified business expenses and ignored or rejected evidence Kokinos submitted supporting their characterization as business expenses. However, Kokinos cites nothing in the record as support for its assertions that it submitted evidence the arbitrator ignored or rejected, so we consider the arguments forfeited. (*Nickell, supra*, 206 Cal.App.4th at p. 947.) In any event, the arbitrator

---

[9] Kokinos also claims as further evidence of "bias and vindictiveness" the fact that the arbitrator awarded prejudgment interest "back to January 1, 2020, when much of the revenue in question had not yet been received." However, Kokinos provides no citation to the record for this factual assertion, so we consider it forfeited. (*Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 947 (*Nickell*); Cal. Rules of Court, rule 8.204(a)(1)(C).)

explained that Kokinos had either failed to respond to the expert's questions and requests for additional information, or failed to provide supporting documentation regarding these expenses. As the trial court held, that did "*not* evince the appearance of bias or personal animus, but merely an independent arbitrator and accounting expert acting within the bounds of its functions."

Seventh, Kokinos argues that the arbitrator improperly excluded numerous valid business expenses from the accounting, contrary to the terms of the agreement. Because the agreement is not in the record, we may not consider this argument. Kokinos also argues that the arbitrator "falsely claimed" that Kokinos failed to produce supporting documents. However, Kokinos again provides no citations to the record, and merely asserts that the arbitrator "refused to consider documentation produced or grant Appellant's request for a hearing." We consider the argument forfeited. (*Nickell, supra*, 206 Cal.App.4th at p. 947.)

Kokinos also argues that the arbitrator's decision not to address its objections to various expenses in the expert's final report, which Kokinos had failed to raise in response to the draft report, was improper and further evidence of bias. Kokinos claims the expense categories had not been included in the expert's draft report, so it could not have objected to them, and that the arbitrator's refusal to consider Kokinos's objections to the final report violated her own scheduling order. However, neither the expert's draft report nor the scheduling order is part of the record on appeal because neither was before the trial court when it ruled on the petitions to vacate or confirm the arbitration award, so we may not consider the argument.

Eighth, Kokinos argues that the arbitrator "invented a new contractual condition[s]" in the agreement by allowing the expert to exclude a life insurance policy issued to Dr. Kokinos from the list of qualifying business expenses, instead classifying it as a personal expense. Kokinos objects to the arbitrator's statement that it was "fundamentally unfair to charge [Dr. Hill] 50% for a disability policy that accrued solely

20

for Dr. Kokinos' benefit," and that nothing in the agreement suggested that Kokinos was required to provide identical benefits to Dr. Hill and Dr. Kokinos. Because the agreement is not in the record, we cannot review it for purposes of considering this argument and cannot construe the arbitrator's statement in this regard as evidence of bias.

In sum, the trial court did not err in concluding that a reasonable person would not have determined the arbitrator was biased against Kokinos.

### 3. *Alleged failure to receive or hear evidence, or set a hearing*

Kokinos argues that the failure to set a hearing deprived it of the ability to submit testimony and cross-examine Dr. Hill or the expert and precluded the submission of additional evidence. "With a full and fair hearing," Kokinos argues, "a fair and unbiased arbitrator would have reached a different result." Further, it contends that the "accounting errors and unjustified exclusions presumably would not have occurred had [it] been given an opportunity to explain at a hearing."

However, as we have explained, there is no requirement that a live hearing be held in an arbitration proceeding. (*Royal Alliance, supra*, 2 Cal.App.5th at p. 1108.) Nor did the parties' stipulation provide that a live hearing must be held. Instead, it provided that the arbitrator would "consider the legal opinions and documentary evidence, *and either render a decision, or schedule a hearing* between the parties to resolve the matter."

Kokinos also argues that the arbitrator rejected and refused to consider evidence it submitted. It lists 16 distinct categories of evidence it claims were "unjustifiably rejected" by the arbitrator and the expert. However, Kokinos essentially repeats its earlier arguments and objections to the arbitrator's rulings, which we have addressed above. Although Kokinos asserts that the arbitrator rejected or refused to hear evidence, its citations to the record do not support those assertions.[10] And although Kokinos argues

---

[10] Kokinos cites a declaration from Dr. Kokinos submitted in support of the petition to vacate the final award. However, the declaration itself included no evidence in (continued)

that it could have corrected the expert's and arbitrator's errors at an evidentiary hearing, no such hearing was required, and Kokinos has not otherwise explained any way in which it was denied an equal opportunity to present its evidence. (See, e.g., *Royal Alliance, supra*, 2 Cal.App.5th at p. 1108 [opportunity to be heard must be extended to all parties equitably].)

### 4. *Waiver of evidentiary hearing*

Kokinos argues that it never agreed to waive a hearing, and the statement in the arbitration award to the contrary "is demonstrably false." Kokinos acknowledges that the stipulation expressly provided that, "[u]pon the appointment of the expert, the Arbitration hearing scheduled for October 13-16th will be cancelled." Nevertheless, it argues that was not a "legal waiver of the arbitration hearing."

As support, Kokinos cites its own May 4, 2023, letter to the arbitrator, in which it stated: "we renew our demand for a full evidentiary hearing at which we will be able to present appropriate unbiased evidence to address the many failings of the biased forensic accountant." Kokinos also cites the declaration from Dr. Kokinos, in which she asserted that the parties had not agreed to waive oral hearings.

Finally, it argues that the parties only agreed "to cancel the hearing until such time as the accounting was prepared, at which point, the parties could demand to reschedule the hearing," and that the language of the stipulation is "vague and certainly does not conclude that the parties *waived* their right to a hearing."

support of Dr. Kokinos's assertions. As just one example, Kokinos cites to a paragraph in the declaration that stated: "The Arbitrator notes that she 'continuously asked Dr. Kokinos for documentation of amounts paid to Drs. Tandon and Singh. However, none was provided.' This is simply false. We provided multiple spreadsheets of all the angiogram cases that were done by them, including amounts billed, collected, written off, how much was used in disposables, etc. We also sent all the checks written to them that were cashed, and my calculations of what was paid to them. In addition, in our objections, we pointed out and sent documentation of the patients that were questioned, including patients where I was the primary operator and Dr. Tandon was the assistant." Yet Dr. Kokinos provided no evidence to support those assertions.

As we have explained, though, there is no right to an oral or in-person evidentiary hearing in an arbitration proceeding in the first place. (*Royal Alliance, supra*, 2 Cal.App.5th at p. 1108.) Nor has Kokinos identified anything in the record showing that the parties agreed to conduct such a hearing.

### III.    DISPOSITION

The judgment is affirmed. Respondent may recover his costs on appeal.

_____
                       Wilson, J.

WE CONCUR:

_____
             Grover, Acting P. J.

_____
             Lie, J.

*Polyxene G. Kokinos, M.D., A.P.C., v. Hill*
H052224